UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
In the Matter of the Arbitration between :
:
NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA., on behalf of :
itself and its related insurers, : No. 16-cv-5699 (JGK)
:
           Petitioner, : **PETITION FOR ARBITRATION**
:
v. :
:
ADVANCED MICRO DEVICES, INC., :
:
           Respondent. :
----------------------------------------x

    Petitioner National Union Fire Insurance Company of Pittsburgh, Pa., on behalf of itself and its related insurers (collectively, "National Union" or "Petitioner"), by and through its attorneys, Sidley Austin LLP, as and for its petition to compel arbitration between Petitioner and Respondent Advanced Micro Devices, Inc. ("AMD" or "Respondent"), alleges as follows:

### NATURE OF THE ACTION

    1.    This action arises out of Respondent's brazen attempt to circumvent the parties' agreement to arbitrate by filing a preemptive declaratory judgment action in California. Respondent's egregious breach of the parties' agreement and blatant forum shopping is designed to deny National Union the benefit of the parties' bargain: the arbitration of the parties' disputes by a panel of arbitrators in New York. The Court should compel Respondent to honor its agreement to arbitrate and immediately bar Respondent from pursuing the California litigation any further.

2.      Beginning in 1988 and continuing through 2002, National Union provided Respondent with workers' compensation and employers' liability insurance coverage for Respondent's manufacturing operations throughout the United States.

3.      Despite its receipt of the substantial benefits afforded under the Insurance Program it procured, including coverage in connection with several multi-plaintiff chemical exposure cases, Respondent has failed to pay National Union at least $3,339,575 in retrospective premium due in connection with the coverage afforded. The amount currently due and owing is comprised of $2,678,527 in reimbursable losses and expenses and $661,048 in fees, each of which Respondent is required to pay pursuant to the clear and unambiguous terms of the governing agreements. Respondent's refusal to remit payment of the amounts owed constitutes a clear and material breach of the parties' agreements and has caused National Union significant monetary damages.

4.      After numerous attempts to collect the amounts due and owing, including a mediation, Petitioner served Respondent with a Demand for Arbitration (the "Arbitration Demand"). Despite their clear obligation to do so, Respondent has refused to arbitrate the parties' dispute. Petitioner seeks an order of this Court compelling Respondent to honor its contractual obligation to submit to arbitration.

## THE PARTIES

5.      Petitioner is an insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in the State of New York.

6.      Upon information and belief, Respondent is a Delaware corporation with principal place of business in Sunnyvale, California.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that the controversy is between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) & (3).

## BACKGROUND

### I. THE AGREEMENTS

9. National Union provided AMD with retrospectively rated workers' compensation and employers' liability insurance coverage for AMD's manufacturing operations throughout the United States during the period July 1, 1988 through July 1, 2002 (the "Insurance Program"). In addition to the various policies issued in connection with the Insurance Program, AMD's obligations regarding the payment of premium, fees, expenses, and losses, and the retrospective adjustment of such components of the Insurance Program, are governed by the following agreements:

- Indemnity Agreements by and between National Union and AMD covering the years 1988 and 1989 (the "1988 Indemnity Agreement" and the "1989 Indemnity Agreement," respectively);

- Indemnity Agreements by and between National Union and AMD, and the Policy and Funding Schedules applicable thereto, covering the years 1990 through 1995 (together with the 1988 and 1989 Indemnity Agreements, the "Indemnity Agreements");

- Payment Agreements by and between National Union and AMD, and the various Schedules of Policies and Payments annexed thereto, covering the years 1995 through 2002 (collectively, the "Payment Agreements");

- Large Risk Rating Plan Endorsements issued by National Union to AMD covering the years 1995 through 2002 (collectively, the "LRRPs," and together with the Payment and Indemnity Agreements, the "Program Agreements").

## II. RESPONDENT'S PAYMENT OBLIGATION

10. Pursuant to the terms of the Indemnity Agreements, AMD must pay National Union the "Gross Premium" or "Gross Program Premium," which consists of, among other things, (i) Profit and Administration ("PA"), (ii) Taxes, Board Charges, Bureau Charges, and Residual Market Charges ("TBB"), and (iii) AMD's estimated losses within the applicable retention, *i.e.*, the loss provision, in return for the coverage afforded under the Insurance Program during the policy periods July 1, 1988 to July 1, 1995.

11. The Indemnity Agreements contemplate the payment of an estimated Gross Premium at inception (or pursuant to an agreed-upon fixed payment schedule). However, the Indemnity Agreements also provide that the Gross Premium is subject to periodic retrospective review and adjustment. If in connection with such a retrospective review National Union determines that AMD's Incurred Losses exceed the estimated losses or loss provision calculated at inception of the policy period, AMD's Gross Premium will increase by the same amount. Additionally, "the fees and charges" due under the Indemnity Agreements "which are dependent on Gross Premium or Subject Premium will be increased by the percentages [rates] indicated" in each of the Indemnity Agreements. By the same token, in the event AMD's Incurred Losses decrease, the Gross Premium will decrease and may result in the issuance of a return premium to AMD.

12. The Payment Agreements and LRRPs also require AMD to pay an estimated premium at inception of the applicable policy periods as well as retrospectively adjusted premium in accordance with the terms of, and rates provided in, the applicable LRRP in return for the coverage National Union provided AMD during the policy periods July 1, 1995 to July 1, 2002. In particular, each of the LRRPs require AMD to pay the "Final Premium," which again includes, among other things, certain expenses such as PA and TBB. As under the Indemnity

4

Agreements, if National Union determines that there has been an increase in AMD's losses, there may be an increase in the various components of the retrospective premium at the rates provided in the LRRP, including PA and TBB. And, again, a decrease in AMD's losses may result in the issuance of a return premium to AMD. The Indemnity Agreements and Payment Agreements (in conjunction with the applicable LRRPs), prescribe that AMD must reimburse National Union for loss payments up to $300,000 and defense expenses in an amount in proportion to loss payments National Union makes on AMD's behalf.

13. The Indemnity Agreements, the 1995 Payment Agreement, and the 1996 Payment Agreement require AMD to remit payment of such reimbursements within 15 days of National Union's demand for payment, whereas the 1998 Payment Agreement requires payment within 30 days.

### III. RESPONDENT'S FAILURE TO REMIT PAYMENT

14. During the course of the parties' relationship, National Union has always honored its obligation to provide insurance coverage and other services to AMD as prescribed by the Program Agreements. For its part, AMD has enjoyed the substantial benefits provided by National Union under the Insurance Program, yet has failed to honor its obligation to remit amounts owed pursuant to the terms of the Indemnity and Payment Agreements. Specifically, AMD has failed to remit payment of $3,339,575, comprised of $2,678,527 in reimbursable losses and expenses paid by National Union on Respondent's behalf and $661,048 in fees.

### IV. THE ARBITRATION CLAUSES

15. From 1988 through 1995, National Union and AMD entered into Indemnity Agreements which contain a broad arbitration clause. The Indemnity Agreements require that, "[a]ll disputes or differences arising out of the interpretation of this Agreement shall be

submitted to the decision of two (2) Arbitrators." The Indemnity Agreements further provide that "[t]he arbitration proceeding shall take place in New York, New York."

16. Like the Indemnity Agreements, the Payment Agreements, also contained expansive arbitration provisions. The 1995 and 1996 Payment Agreements include an arbitration provision, requiring that, "[a]ll unresolved disputes or differences arising out of or relating to this Agreement will be submitted to the decision of three Arbitrators." The 1995 and 1996 Indemnity Agreements further provided that "The arbitration proceeding shall take place in New York, New York."

17. In 1998, the parties again entered into a Payment Agreement. The 1998 Payment Agreement required that:

> **Unresolved disputes must be settled by Arbitration.** If a dispute that *you* and we cannot settle by mutual agreement arises about this agreement or any transaction related to it, that dispute must be submitted to 3 arbitrators. (emphasis in original.)

18. The 1998 Payment Agreement further provided that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." The 1998 Payment Agreement further provided that "The arbitration must take place in New York, New York unless you and we agree otherwise."

## V.   THE DEMAND FOR ARBITRATION

19. Petitioner and Respondent dispute Respondent's obligation to remit payment in connection with the Program Agreements. Despite Petitioner's repeated requests for payment, Respondent refuses to remit payment. The parties' dispute is clearly governed by the arbitration clause set forth in the Payment Agreement and is ripe for adjudication in that forum.

20. On the morning of July 15, 2016, served AMD with the Arbitration Demand.

21. National Union provided AMD, and its counsel, with notice of the Arbitration Demand via email and also served National Union by hand, care of its registered agent.

## VI. RESPONDENT'S REFUSAL TO ARBITRATE

22. In response to the Demand, Respondent filed a complaint against National Union and various affiliates in California late on July 15, 2016.

23. As of the filing of this petition, National Union has not yet been served with AMD's complaint.

24. Specifically, Respondent seeks a judicial determination that, among other things, they are not bound by the terms of the Payment and Indemnity Agreements or, specifically, the arbitration clause set forth therein, and that Petitioner has no right to demand that Respondent submit to arbitration in accordance with the terms of the Indemnity and Payment Agreements.

25. Commencement of the California Action constitutes a clear failure and refusal to arbitrate by Respondent.

26. No previous application for the relief sought has been made.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that:

(1) an order be made pursuant to 9 U.S.C. § 4 compelling Respondents to arbitrate the parties' dispute concerning Respondents' payment obligations pursuant to the binding arbitration provisions of the Indemnity Agreements and Payment Agreements;

(2) an order be made for temporary, preliminary, and permanent injunctive relief enjoining Respondents from pursuing the California Action;

(3) granting Petitioner its attorneys' fees and costs; and

(4)    for such other relief as the Court may deem just and proper.


Dated: New York, New York    SIDLEY AUSTIN LLP
July 18, 2016

By: _____
Nicholas P. Crowell
ncrowell@sidley.com
Andrew D. Hart
ahart@sidley.com
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for Petitioner National Union Fire Insurance Company of Pittsburgh, Pa.*