UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Arbitration between :
                                       :

NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA., on behalf of :
itself and its related insurers, :       No. 16-cv-5699 (JGK)
                                       :

              Petitioner, :
                                       :

     v. :
                                       :

ADVANCED MICRO DEVICES, INC., :
                                       :

              Respondent. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF ITS ORDER TO SHOW CAUSE TO
COMPEL ARBITRATION AND FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................3

I.  THE AGREEMENTS .................................................................................4

II.  THE PARTIES' AGREEMENTS TO ARBITRATE.....................................4

III.  PETITIONER'S PAYMENT OBLIGATION ..............................................5

IV.  THE PARTIES' DISPUTE.........................................................................7

V.  THE MEDIATION AND TERMINATION OF THE TOLLING AGREEMENT............7

VI.  THE DEMAND FOR ARBITRATION .......................................................8

VII.  RESPONDENT'S FORUM SHOPPING .....................................................8

ARGUMENT ...........................................................................................................8

I.  THE COURT SHOULD ORDER AMD TO ARBITRATE THE PARTIES' DISPUTE ...........................................................................................8

    A.  The Parties' Dispute is Subject to Mandatory Arbitration.......................8

        1.  A Valid Agreement to Arbitrate Exists.................................10

        2.  The Dispute Is Within the Scope of the Parties' Agreements to Arbitrate ...................................................................11

II.  THE COURT SHOULD IMMEDIATELY ENJOIN RESPONDENT FROM PURSUING THE CALIFORNIA LITIGATION............................................14

    A.  National Union Has Shown a Likelihood of Success on the Merits.....................15

    B.  National Union Will Suffer Irreparable Harm in the Absence of Immediate Injunctive Relief...............................................................15

    C.  Public Interest and Balancing of the Equities Overwhelmingly Favors Injunctive Relief...............................................................17

III.  RESPONDENT'S FILING IN CALIFORNIA STATE COURT SHOULD BE GIVEN NO WEIGHT....................................................................18

CONCLUSION.......................................................................................................19

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,*
  307 F.3d 24 (2d Cir. 2002) ....................................................................................................10

*AIM Int'l Trading, LLC v. Valcucine SpA,*
  188 F. Supp. 2d 384 (S.D.N.Y. 2002) ...................................................................................16

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
  513 U.S. 265 (1995) ................................................................................................................8

*Am. Express Co. v. Italian Colors Rest.,*
  133 S. Ct. 2304 (2013) ...........................................................................................................9

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ................................................................................................................9

*Ayco Co., L.P. v. Frisch,*
  795 F. Supp. 2d 193 (N.D.N.Y 2011) ...................................................................................15

*Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.,*
  424 F.3d 278 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co.*
  *v. Int'l Bhd. of Teamsters,* 561 U.S. 287 (2010) ...................................................................9

*Banque De Paris Et Des Pays-Bas v. Amoco Oil Co.,*
  573 F. Supp. 1464 (S.D.N.Y. 1983) ......................................................................................12

*British Ins. Co. of Cayman v. Water St. Ins. Co.,*
  93 F. Supp. 2d 506 (S.D.N.Y. 2000) .....................................................................................13

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) ....................................................................................................8, 13, 18

*Chase Mortg. Company-West v. Bankers Trust Co.,*
  No. 00 CIV. 8150, 2001 WL 547224 (S.D.N.Y. May 23, 2001) ..........................................12

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30 (2d Cir. 2010) ....................................................................................................14

*Colorado-Ark.-Tex. Distrib., L.L.C. v. Am. Eagle Food Products, Inc.,*
  525 F. Supp. 2d 428 (S.D.N.Y. 2007) ...................................................................................10

*Denney v. BDO Seidman, L.L.P.,*
  412 F.3d 58 (2d Cir. 2005) ....................................................................................................10

*Doctor's Assocs., Inc. v. Distajo*,
    107 F.3d 126 (2d Cir. 1997)................................................................15

*Emilio v. Sprint Spectrum L.P.*,
    2008 U.S. Dist. LEXIS 114709 (S.D.N.Y. Nov. 5, 2008), *aff'd Emilio v. Sprint
    Spectrum, L.P.*, 315 Fed. Appx. 322 (2d Cir. 2009) ................................16

*Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*,
    No. 98-7181, 1999 WL 637236 (S.D.N.Y. Aug. 20, 1999)................................10, 12

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
    848 F. Supp. 2d 410 (S.D.N.Y. 2012)................................................................10

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
    561 U.S. 287 (2010)................................................................11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)................................................................9, 15

*Petition of Home Ins. Co.*,
    908 F. Supp. 180 (S.D.N.Y. 1995) ................................................................18

*Hunt v. Mobil Oil Corp.*,
    557 F. Supp. 368 (S.D.N.Y. 1983) ................................................................15

*JVN Music, Inc. v. Rodriguez*,
    No. 99 Civ. 11889, 2000 WL 827702 (S.D.N.Y. June 27, 2000)................................11

*Kelly v. Evolution Markets, Inc.*,
    626 F. Supp. 2d 364 (S.D.N.Y. 2009)................................................................14

*KPMG LLP v. Cocchi*,
    132 S. Ct. 23 (2011) (per curiam) ................................................................9

*Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh,
    Pa.* 26 N.Y.3d 659, 665 (2016)................................................................13

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
    482 F.Supp. 788 (D. Fla. 1980), *rev'd on other grounds*, 677 F.2d 391 (4th Cir.
    1982) ................................................................16

*Nat'l Union Fire Ins. Co. of Pitts., Pa. v. Champps Entm't, Inc.*,
    No. 04-6163, 2004 WL 2884304 (S.D.N.Y. Dec. 13, 2004)................................9

*Nat'l Union Fire Ins. Co. of Pitts., Pa. v. Las Vegas Prof'l Football LP*,
    No. 09-7490, 2009 WL 4059174 (S.D.N.Y. Nov. 17, 2009)................................8

iv

*Nat'l Union Fire Ins. Co. v. Las Vegas Professional Football Ltd. P'ship,*
  2010 WL 286634 (S.D.N.Y. 2010) .................................................................................18, 19

*Novik & Co., Inc. v. Jerry Mann, Inc.,*
  497 F. Supp. 447 (S.D.N.Y. 1980) .................................................................................15

*Nuclear Elec. Ins. Ltd. v. Central Power & Light Co.,*
  926 F. Supp. 428 (S.D.N.Y. 1996) .................................................................................12

*Olde Discount Corp. v. Tupman,*
  1 F.3d 202 (3d Cir. 1993)........................................................................................16, 17

*Palese v. Tanner Bolt & Nut, Inc.,*
  985 F. Supp. 2d 372 (E.D.N.Y. 2013) ...........................................................................10

*Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.,*
  2003 WL 23641529 (S.D.N.Y. June 4, 2003) ...............................................................16

*Pervel Indus., Inc. v. TM Wallcovering, Inc.,*
  675 F. Supp. 867 (S.D.N.Y. 1987) .................................................................................15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
  388 U.S. 395 (1967)........................................................................................................8

*Raytheon Co. v. National Union Fire Ins. Co.,*
  306 F. Supp. 2d 346 (S.D.N.Y. 2004)............................................................................18

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.,*
  962 F. Supp. 385 (S.D.N.Y. 1997) .................................................................12, 14, 16

*Rent-A-Ctr., W., Inc. v. Jackson,*
  561 U.S. 63 (2010).........................................................................................................10

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.,*
  754 F. Supp. 2d 616 (S.D.N.Y. 2010)............................................................................18

*Spinelli v. Nat'l Football League,*
  96 F. Supp. 3d 81 .........................................................................................................10

*Stitz v. Equitable Life Assur. Soc. Of U.S.,*
  No. 94 Civ. 3280, 1998 WL 8991 (S.D.N.Y. Jan. 7, 1998)..........................................15

*Telenor Mobile Commc'ns AS v. Storm LLC,*
  584 F.3d 396 (2d Cir. 2009)..........................................................................................11

*Thomas James Assocs., Inc. v. Jameson,*
  102 F.3d 60 (S.D.N.Y. 1996).........................................................................................12

**Statutes**

9 U.S.C. § 4.............................................................................................................................18

Federal Rule of Civil Procedure 65 ......................................................................................1

Petitioner National Union Fire Insurance Company of Pittsburgh, Pa., on behalf of itself and its related insurers ("National Union" or "Petitioner"), through its attorneys, respectfully submits this memorandum of law in support of its order to show cause (1) for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") compelling Advanced Micro Devices, Inc. ("AMD" or "Respondent") to arbitrate the parties' dispute concerning amounts owed for retrospective premium, and (2) for an order pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction and a temporary restraining order barring AMD from pursuing litigation of the parties' dispute outside of the arbitral forum to which the parties' agreed.

## PRELIMINARY STATEMENT

This action arises out of Respondent's brazen attempt to circumvent the parties' agreement to arbitrate by filing a preemptive declaratory judgment action in California. Respondent's breach of the parties' agreement and blatant forum shopping is designed to deny National Union the benefit of the parties' bargain:  the arbitration of the parties' disputes by a panel of arbitrators in New York.  The Court should compel Respondent to honor its agreement to arbitrate and immediately bar Respondent from pursuing the California litigation any further.

Beginning in 1988 and continuing through 2002, National Union and Respondent entered into a series of agreements which govern, among other things, Respondent's obligation to remit payment of retrospective premium in connection with the workers' compensation and employers' liability insurance coverage provided by National Union during this same period (the "Insurance Program").  (Ex. 1-8; Hart. Decl. ¶ 10.) [1]  Critically, each and every one of these agreements executed over the course of over a decade contains a broad arbitration clause

---

[1] All exhibits cited herein are appended to the Declaration of Andrew D. Hart in Support of Petitioner's Order to Show Cause to Compel Arbitration and for Injunctive Relief, filed contemporaneously herewith ("Hart Decl.").

requiring the parties to arbitrate their disputes. (Exs. 1-5, Art. IX; Exs. 6-7, Part IV, Art. 3; Ex 8, at 9-10.) Moreover, and also of critical importance, the arbitration provisions command that the parties arbitrate their disputes in New York. *Id.* Respondent now refuses to honor either of these key provisions of the parties' agreements or its contractual obligation to remit payment of millions of dollars in premium.

For nearly two years, Respondent has continuously refused to pay over $3 million in retrospective premium due in connection with the Insurance Program. Despite its receipt of the substantial benefits afforded under the Insurance Program for more than a decade, including coverage in connection with several multi-plaintiff chemical exposure cases. (Hart Decl. ¶ 15.) National Union's attempts to resolve the matter amicably have been rebuffed, and Respondent has refused to negotiate in good faith. As a consequence, and in strict accordance with the parties' agreements, National Union served Respondent with a demand for arbitration on the morning of July 15, 2016. (Exs. 11-12.) Much later that same day, Respondent filed a declaratory judgment action in California in clear violation of the parties' clear and unambiguous agreement to arbitrate the dispute. (Ex. 13.)

Respondent's attempt to deprive National Union of its contractual right to arbitrate the parties' disputes in New York must not continue unabated. As set forth more fully below, there can be no dispute that National Union easily meets the standard for a motion to compel arbitration. The parties repeatedly and consistently agreed to arbitrate *any* dispute. There also can be no question that the dispute at hand falls well within the broad contours of the governing arbitration provisions.

Moreover, National Union is clearly entitled to injunctive relief pending the Court's ruling on the motion to compel. Not only can National Union clearly demonstrate well beyond a

2

reasonable likelihood of success on the merits, it is beyond any doubt that it will suffer

immediate, irreparable, and permanent harm if Respondent is permitted to continue to prosecute

the California litigation.  Indeed, if not immediately restrained from its pursuit of relief in

California, National Union will be deprived of its bargained for forum, forced to undertake costly

discovery, and forced to proceed to trial in California.  There is simply no adequate remedy at

law to compensate National Union for such clear deprivations of its contractual rights.  Finally,

there is no question that the balance of the equities and the public interest both counsel in favor

of the requested injunctive relief.  Indeed, injunctive relief here will merely maintain the status

quo pending resolution of National Union's motion to compel.  Moreover, there is an

exceedingly strong public policy in favor of enforcing agreements to arbitrate.

Accordingly, National Union respectfully requests that the Court enter an order

compelling Respondent to arbitrate the parties' dispute and immediately barring Respondent

from prosecuting the California litigation further.

## STATEMENT OF FACTS

The genesis of the parties' dispute lies in AMD's refusal to honor its contractual

obligation to pay retrospective premium due in connection with an insurance program provided

by National Union.  Beginning in 1988 and continuing through 2002, National Union provided

AMD with workers' compensation and employers' liability insurance coverage for AMD's

manufacturing operations throughout the United States (*i.e.* the Insurance Program).  (Exs. 1-8.)

Despite its receipt of the substantial benefits afforded under the Insurance Program it procured,

including coverage in connection with several multi-plaintiff chemical exposure cases, AMD has

failed to pay National Union at least $3,339,575 in retrospective premium due in connection with

the coverage afforded under the Insurance Program.  (Hart Decl. ¶ 15.)  The amount of

retrospective premium currently due and owing is comprised of $2,678,527 in reimbursable

3

losses and expenses and $661,048 in fees, each of which AMD is required to pay pursuant to the

clear and unambiguous terms of the governing agreements. *Id.* AMD's refusal to remit payment

of the premium owed constitutes a clear and material breach of the parties' agreements and has

caused National Union significant monetary damages. When National Union demanded that

AMD arbitrate the parties' dispute as required by the parties' agreements, AMD commenced a

preemptory declaratory judgment action in California. (Ex. 13.)

## I.     THE AGREEMENTS

AMD's obligations regarding the payment of premium, fees, expenses, and losses, and

the retrospective adjustment of such components of the Insurance Program, are governed by the

following agreements:

- Indemnity Agreements by and between National Union and AMD covering the years 1988 and 1989 (the "1988 Indemnity Agreement" and the "1989 Indemnity Agreement," respectively) (Exs. 1-2.);

- Indemnity Agreements by and between National Union and AMD, and the Policy and Funding Schedules applicable thereto, covering the years 1990 through 1995 (together with the 1988 and 1989 Indemnity Agreements, the "Indemnity Agreements") (Exs. 3-5);

- Payment Agreements by and between National Union and AMD, and the various Schedules of Policies and Payments annexed thereto, covering the years 1995 through 2002 (collectively, the "Payment Agreements") (Exs. 6-8.);

- Large Risk Rating Plan Endorsements issued by National Union to AMD covering the years 1995 through 2002 (collectively, the "LRRPs," and together with the Payment and Indemnity Agreements, the "Program Agreements") (Hart Decl. ¶ 10.)

## II.    THE PARTIES' AGREEMENTS TO ARBITRATE

For over a decade, Respondent repeatedly agreed to arbitrate pursuant to expansive

arbitration provisions set forth in the Indemnity and Payment Agreements (the "Arbitration

Provisions"). As noted above, from 1988 through 1995, National Union and AMD entered into

Indemnity Agreements which plainly provided for arbitration.  In particular, the Indemnity Agreements require that, "[a]ll disputes or differences arising out of the interpretation of this Agreement shall be submitted to the decision of two (2) Arbitrators."  (Ex. 1, Art. IX; Ex. 2, Art. IX; Ex. 3, Art. IX.)  The Indemnity Agreements further provide that "The arbitration proceeding shall take place in New York, New York."  (Exs. 1-5.)

Beginning in 1995, the parties entered into a series of Payment Agreements.  Like the Indemnity Agreements, the Payment Agreements, also contained expansive Arbitration Provisions.  The 1995 and 1996 Payment Agreements include an arbitration provision, requiring that, "[a]ll unresolved disputes or differences arising out of or relating to this Agreement will be submitted to the decision of three Arbitrators."  (Ex. 6, Art. 3; Ex. 7, Art. 3.)  The 1995 and 1996 Indemnity Agreements further provided that "The arbitration proceeding shall take place in New York, New York."  *Id.*

In 1998, the parties again entered into a Payment Agreement.  The 1998 Payment Agreement required that:

> **Unresolved disputes must be settled by Arbitration.**  If a dispute that *you* and we cannot settle by mutual agreement arises about this agreement or any transaction related to it, that dispute must be submitted to 3 arbitrators.  (emphasis in original.)

(Ex. 8, at 9-10.)

The 1998 Payment Agreement further provided that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."  *Id.*  The 1998 Payment Agreement further provided that "The arbitration must take place in New York, New York unless you and we agree otherwise."  *Id.*

## III.   PETITIONER'S PAYMENT OBLIGATION

Pursuant to the terms of the Indemnity Agreements, AMD must pay National Union the "Gross Premium" or "Gross Program Premium," which consists of, among other things, (i) Profit

and Administration ("PA"), (ii) Taxes, Board Charges, Bureau Charges, and Residual Market Charges ("TBB"), and (iii) AMD's estimated losses within the applicable retention, *i.e.*, the loss provision, in return for the coverage afforded under the Insurance Program during the policy periods July 1, 1988 to July 1, 1995. (Exs. 1-5.) The Indemnity Agreements contemplate the payment of an estimated Gross Premium at inception (or pursuant to an agreed-upon fixed payment schedule). *Id.* However, the Indemnity Agreements also provide that the Gross Premium is subject to periodic retrospective review and adjustment. *Id.* If in connection with such a retrospective review National Union determines that AMD's Incurred Losses exceed the estimated losses or loss provision calculated at inception of the policy period, AMD's Gross Premium will increase by the same amount. *Id.* Additionally, "the fees and charges" due under the Indemnity Agreements "which are dependent on Gross Premium or Subject Premium will be increased by the percentages [rates] indicated" in each of the Indemnity Agreements. *Id.* By the same token, in the event AMD's Incurred Losses decrease, the Gross Premium will decrease and may result in the issuance of a return premium to AMD. *Id.*

The Payment Agreements and LRRPs also require AMD to pay an estimated premium at inception of the applicable policy periods as well as retrospectively adjusted premium in accordance with the terms of, and rates provided in, the applicable LRRP in return for the coverage National Union provided AMD during the policy periods July 1, 1995 to July 1, 2002. (Exs. 1-5.) In particular, each of the LRRPs require AMD to pay the "Final Premium," which again includes, among other things, certain expenses such as PA and TBB. *Id.* As under the Indemnity Agreements, if National Union determines that there has been an increase in AMD's losses, there may be an increase in the various components of the retrospective premium at the rates provided in the LRRP, including PA and TBB. *Id.* And, again, a decrease in AMD's losses

may result in the issuance of a return premium to AMD. The Indemnity Agreements and Payment Agreements (in conjunction with the applicable LRRPs), prescribe that AMD must reimburse National Union for loss payments up to $300,000 and defense expenses in an amount in proportion to loss payments National Union makes on AMD's behalf. *Id.*

The Indemnity Agreements, the 1995 Payment Agreement, and the 1996 Payment Agreement require AMD to remit payment of such reimbursements within 15 days of National Union's demand for payment, (Exs. 6-7.) whereas the 1998 Payment Agreement requires payment within 30 days. (Ex. 8.)

## IV.   THE PARTIES' DISPUTE

During the course of the parties' relationship, National Union has always honored its obligation to provide insurance coverage and other services to AMD as prescribed by the Program Agreements. For its part, AMD has enjoyed the substantial benefits provided by National Union under the Insurance Program, yet has failed to honor its obligation to remit amounts owed pursuant to the terms of the Indemnity and Payment Agreements. Specifically, AMD has failed to remit payment of $3,339,575 in retrospective premium, comprised of $2,678,527 in reimbursable losses and expenses paid by National Union on AMD's behalf and $661,048 in fees. (Hart. Decl. ¶ 15.)

## V.   THE MEDIATION AND TERMINATION OF THE TOLLING AGREEMENT

On July 1, 2015, the parties entered into a Tolling Agreement by and between AMD and National Union (the "Tolling Agreement"). (Ex. 9.) By the terms of the Tolling Agreement, the parties agreed that all limitation periods that may limit the right of either party "are hereby tolled as of the Effective Date and until the Termination Date." (Ex. 9 ¶ 3.) Following the signing of the Tolling Agreement, the parties attempted to amicably resolve their dispute through mediation on June 30, 2016. The mediation was unsuccessful. Following the mediation, National Union

terminated the Tolling Agreement, on June 30, 2016 (the "Notice of Termination").  (Ex. 10.)

Under the terms of the Tolling Agreement, the termination became effective 15 days after the

Notice of Termination, on July 15, 2016.  (Ex. 9 ¶ 4.)

## VI.    THE DEMAND FOR ARBITRATION

On the morning of July 15, 2016, Petitioner served AMD with a demand for arbitration

(the "Arbitration Demand").  (Ex. 11.)  National Union provided AMD, and its counsel, with

notice of the Arbitration Demand via email and also served AMD by hand, care of its registered

agent. (Exs. 11-12.)

## VII.    RESPONDENT'S FORUM SHOPPING

In response to the Arbitration Demand, Respondent  chose to violate the terms of the

Payment Agreements and Indemnity Agreements by filing a complaint against National Union

and various affiliates in California late on July 15, 2016.  (Ex. 13.)  As of the filing of this brief,

National Union has not yet been served with AMD's complaint.

## ARGUMENT

## I.    THE COURT SHOULD ORDER AMD TO ARBITRATE THE PARTIES' DISPUTE

### A.    The Parties' Dispute is Subject to Mandatory Arbitration

Section 2 of the FAA mandates that binding arbitration agreements in contracts

"evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443

(2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places

arbitration agreements on equal footing with all other contracts.").  The United States Supreme

Court has made clear that the FAA broadly applies to any transaction directly or indirectly

affecting interstate commerce.  *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S.

265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967);

*Nat'l Union Fire Ins. Co. of Pitts., Pa. v. Las Vegas Prof'l Football LP*, No. 09-7490, 2009 WL

4059174, at *3 (S.D.N.Y. Nov. 17, 2009) (the FAA "expresses a liberal federal policy favoring

arbitration agreements"); *see also Nat'l Union Fire Ins. Co. of Pitts., Pa. v. Champps Entm't,

Inc.*, No. 04-6163, 2004 WL 2884304, at *2 (S.D.N.Y. Dec. 13, 2004) ("The Federal Arbitration

Act requires courts to rigorously enforce agreements to arbitrate." (internal quotation and citation

omitted)).

Over the last several years, the United States Supreme Court has issued a series of

decisions confirming that the FAA "reflects an 'emphatic federal policy in favor of arbitral

dispute resolution.'"  *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (quoting

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also

Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("consistent with [the

FAA's] text, courts must 'rigorously enforce' arbitration agreements") (citation omitted); *AT&T

Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (The "principal purpose of the FAA is to

ensur[e] that private arbitration agreements are enforced according to their terms.") (internal

quotation marks omitted).

Under the FAA, arbitration must be compelled where:  (1) a valid, enforceable agreement

to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement.  *See Bank

Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other

grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010).  An arbitration

agreement governed by the FAA, like the Arbitration Provisions here, is *presumed* to be valid

and enforceable.  Indeed, it is well settled that the party resisting arbitration bears the burden of

showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Here, AMD cannot meet this burden because it repeatedly entered into valid and enforceable agreements to arbitrate and the dispute between the parties falls clearly within the broad scope of those agreements.

        1.      A Valid Agreement to Arbitrate Exists

    "[A]rbitration is a matter of contract," and agreements to arbitrate must be enforced "according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). To determine whether a valid agreement to arbitrate exists, the court should apply ordinary state law principles governing contract formation.[2] *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 420-21 (S.D.N.Y. 2012); *Colorado-Ark.-Tex. Distrib., L.L.C. v. Am. Eagle Food Products , Inc.*, 525 F. Supp. 2d 428, 433 (S.D.N.Y. 2007).

    Here, it is beyond any question that the parties entered into exceedingly broad arbitration agreements. The parties agreed, under the Indemnity Agreements to arbitrate "*all* disputes or differences arising out of the interpretation of this Agreement." (Ex. 1, Art. IX; Ex. 2, Art. IX, Ex. 3, Art. IX, Ex. 4, Art. IX, Ex. 5, Art. IX.) (emphasis added).) Similarly, under the Payment Agreements, the parties agreed to arbitrate "*all* unresolved disputes or differences arising out of or relating to th[ose] Agreement[s]." (Ex. 6, Art. 3; Ex. 7, Art. 3.) (emphasis added) Courts have found similar language to be broad and to require arbitration. *Ace Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 32 (2d Cir. 2002) ("the phrase arising out of, under, or in connection with is regarded as being prototypical of a broad arbitration clause."); *Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, No. 98-7181, 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999) (same); *See also Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 69 ("[I]f an arbitration

---

[2] New York law applies in this case. (Ex. 6, Article 6; Ex. 7, Article 6; *see also* Ex. 8 at 10 ("This Agreement will be governed by the laws of the State of New York.").

clause is broad . . . a presumption of arbitrability attached."); *Palese v. Tanner Bolt & Nut, Inc.*, 985 F. Supp. 2d 372, 376 (E.D.N.Y. 2013) (agreement providing that "all claims" are arbitrable is "'classically broad'" and required arbitration); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 99 ("Clauses requiring arbitration disputes 'arising out of or in connection with" [the agreement] are considered 'broad' arbitration clauses" and give way to a presumption of arbitrability.)   AMD cannot reasonably dispute that it is bound by the Indemnity Agreements and Payment Agreements that it willingly executed year after year for over a decade.  Nor can AMD dispute that the Indemnity Agreements and the Payment Agreements both contain broad arbitration clauses, which indisputably apply to the instant dispute.  Accordingly, a valid agreement to arbitrate exists, and AMD should be held to its agreement.

        2.    The Dispute Is Within the Scope of the Parties' Agreements to Arbitrate

     The parties' dispute falls squarely within the scope of the parties' agreement to arbitrate.  "In determining the scope of an arbitration agreement, 'there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 314 (2010).  "Any doubts concerning the scope of arbitrable issues [are] resolved in favor of arbitration." *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (internal quotation marks omitted).  "Broad arbitration clauses purport to refer all disputes arising out of a contract to arbitration." *JVN Music, Inc. v. Rodriguez*, No. 99 Civ. 11889, 2000 WL 827702, at *3 (S.D.N.Y. June 27, 2000).

     The instant dispute falls well within the broad scope of the Arbitration Clauses, and AMD cannot argue otherwise.  Again, the parties entered into very broad arbitration provisions requiring arbitration of "*[a]ll* disputes or differences arising out of the interpretation of this

Agreement (Exs. 1 & 2, Article IX.)," "[a]ll unresolved disputes or differences arising out of or

relating to this Agreement," (Ex. 6-7, Art. 3.) and unresolved disputes that arise out "this

agreement or any transaction related to it" (Ex. 8 at 9). Such broad provisions clearly encompass

a dispute concerning the collection of the retrospective premium owed under the relevant

agreements and the proper interpretation of those agreements. *Fluor Daniel Intercontinental,*

*Inc. v. Gen. Elec. Co.*, No. 98-7181, 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999) (noting

that the phrase "arising out of, under, or in connection with" is regarded as being "prototypical of

a broad arbitration clause"). Accordingly, the Court should compel Respondent to arbitrate the

parties' dispute.[3]

A review of the "claims" in the California litigation reveals that they are merely defenses

to National Union's demand for payment. For instance, Respondent seeks a declaratory

judgment that Indemnity and Payment Agreements are not enforceable and contends that

Petitioner has breached the Program Agreements, engaged in bad faith, and violated California

law simply because it has demanded payment of the retrospective premium Respondent owes.

Courts have repeatedly concluded that if a case is subject to arbitration (as this one clearly is),

any defenses raised by a party are also subject to arbitration. *Thomas James Assocs., Inc. v.*

*Jameson*, 102 F.3d 60, 68 (S.D.N.Y. 1996) ("once a court determines that the parties agreed to

---

[3] Additionally, National Union requests that this court order a stay of the proceedings in the California Action. While courts typically cannot stay proceedings in other courts, courts recognize an exception to this rule when it comes to enforcement and protection of judgments. *See Chase Mortg. Company-West v. Bankers Trust Co.*, No. 00 CIV. 8150, 2001 WL 547224, at *3 (S.D.N.Y. May 23, 2001) ("Court is permitted to enjoin the state court action for the purpose of protecting its judgment."); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 390-91 (S.D.N.Y. 1997) ("A federal court in conjunction with an order compelling arbitration, either on the issue of arbitrability or the issue of the merits of the claim, may stay a related state court action. Were it otherwise, such an order would be rendered meaningless, since a petitioner would have no choice but to litigate arbitrable claims in a pending action or risk default."). This exception permits this court to stay the California Action in favor of arbitration because without such a stay Petitioner would be forced to litigate its arbitrable claims in California and this "court's order compelling arbitration would be undermined." *Id.; Nuclear Elec. Ins. Ltd. v. Central Power & Light Co.*, 926 F. Supp. 428, 436 (S.D.N.Y. 1996). Here, this exception clearly applies, if the proceedings in California are not stayed, National Union may still be forced to litigate there, making a ruling by this court in National Union's favor essentially meaningless.

arbitrate a dispute, then that dispute must be submitted to the arbitrator.  This includes questions of affirmative defenses. . .") (internal citations omitted); *Banque De Paris Et Des Pays-Bas v. Amoco Oil Co.*, 573 F. Supp. 1464, 1468 (S.D.N.Y. 1983) ("once the federal court is satisfied that the issue ...is referable to arbitration, all other issues, including the defenses to and ultimate merits of the claim, are reserved for the arbitrator.") (internal citations omitted); *British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 520 (S.D.N.Y. 2000).  Consequently, Respondent's purported "claims" fall within the broad scope of the Arbitration Provisions and must be arbitrated.

Moreover, to the extent Respondent contends that it is not obligated to arbitrate the parties' dispute because the Indemnity and Payment Agreements were not filed with the California Department of Insurance, this issue can only be decided by the arbitrators.

Under § 2 of the FAA, a party may challenge the validity of an arbitration agreement in two ways: "'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center*, 130 S. Ct. 2772, 2778 (2010) (quoting *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  But "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445.

The New York Court of Appeals' recent decision in *Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, is directly on point.  26 N.Y.3d 659, 665 (2016).  In *Monarch,* the insured – like Respondent – argued that the California Insurance Code required National Union to file the Payment Agreements with the California Department of

Insurance ("CDI"). The insured argued that because National Union had not done so, the

Payment Agreements, and by extension, the arbitration clauses contained therein, were void.

The Court of Appeals ruled that the issue fell squarely within the scope of the arbitration clause,

and thus it was for the arbitrators to decide – not the courts. The Court of Appeals concluded

that "under FAA rules of severability, the question of the enforceability of the Payment

Agreements and the arbitration clauses contained therein should be submitted to arbitration." *Id.*

In so deciding, the Court of Appeals relied upon language in the arbitration provision at issue

that is identical to the language in the 1998 Payment Agreement. Just as in *Monarch,* the 1998

Payment Agreement provides that the arbitrators "will have exclusive jurisdiction over the entire

matter in dispute, including any question as to its arbitrability." (Ex. 8 at Article 9.)

     Here, Respondents contend that the ***entirety*** of the Payment and Indemnity Agreements

are invalid, not merely the arbitration clauses set forth therein. Moreover, the 1998 Payment

Agreement delegates expansive authority over all issues concerning arbitrability to the

arbitrators. (Ex. 8 at 9.) This issue must therefore be decided by the panel of arbitrators alone.

## II.   THE COURT SHOULD IMMEDIATELY ENJOIN RESPONDENT FROM PURSUING THE CALIFORNIA LITIGATION

     The requirements for a temporary restraining order and preliminary injunction are the

same. *See, e.g., Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 375 (S.D.N.Y. 2009) ("It

is well established that in this Circuit the standard for an entry of a TRO is the same as for a

preliminary injunction.") (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y.

2008)). A party seeking a temporary restraining order and preliminary injunction must show

"that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to

succeed on the merits of the action, or (2) that there are sufficiently serious questions going to

the merits to make them a fair ground for litigation, provided that the balance of hardships tips

14

decidedly in favor of the moving party." *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.,*
962 F. Supp. 385, 391 (S.D.N.Y. 1997); *see also Citigroup Glob. Markets, Inc. v. VCG Special*
*Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010) ("For the last five decades, this
circuit has required a party seeking a preliminary injunction to show "(a) irreparable harm and
(b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the
merits to make them a fair ground for litigation and a balance of hardships tipping decidedly
toward the party requesting the preliminary relief.").  As demonstrated below, National Union
has fully satisfied these requirements, and the circumstances here require temporary and
preliminary injunctive relief.  Importantly, courts faced with similar circumstances have
consistently granted injunctions in order to protect a party's right to arbitrate. *See, e.g., Doctor's*
*Assocs., Inc. v. Distajo,* 107 F.3d 126 (2d Cir. 1997); *Stitz v. Equitable Life Assur. Soc. Of U.S.,*
No. 94 Civ. 3280, 1998 WL 8991, at *1 (S.D.N.Y. Jan. 7, 1998).

A.    **National Union Has Shown a Likelihood of Success on the Merits**

As set forth above, National Union has demonstrated a valid and enforceable agreement
to arbitrate, that the dispute between the parties falls squarely within that agreement, and that
AMD has repudiated that provision and refused to follow the terms of the parties' agreements.
Given the presumption that arbitration provisions are enforceable and the heavy burden faced by
AMD in overcoming that presumption, National Union has more than shown a likelihood of
success on the merits. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91-92 (2000) (party
resisting arbitration has burden).

B.    **National Union Will Suffer Irreparable Harm in the Absence of Immediate**
      **Injunctive Relief**

National Union will clearly suffer immediate and irreparable harm if injunctive relief is
not granted.  A party moving for injunctive relief demonstrates irreparable harm by establishing

that the party will suffer "certain and imminent harm for which a monetary award does not adequately compensate." *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 205 (N.D.N.Y 2011). By doing so, courts avoid rendering any potential judgment meaningless. *AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002) ("A temporary restraining order pursuant to Fed. R. Civ. P. 65(b) is designed to preserve the status quo.").

Courts have consistently found that forcing a party to litigate in court in the face of a contractually agreed to arbitration provision constitutes irreparable harm. *Emilio v. Sprint Spectrum L.P.*, 2008 U.S. Dist. LEXIS 114709 (S.D.N.Y. Nov. 5, 2008) (granting injunction to prevent state court litigation in light of arbitration provision in order to "prevent [plaintiff] from suffering the irreparable harm that the loss of his right to arbitrate would entail") *aff'd Emilio v. Sprint Spectrum, L.P.*, 315 Fed. Appx. 322 (2d Cir. 2009); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) ("[plaintiff] will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with [defendant]). If National Union's request for a temporary restraining order and preliminary injunction is denied, it will lose its right to arbitrate, a right protected by both state and federal law. *Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 2003 WL 23641529, at *12 (S.D.N.Y. June 4, 2003) (granting injunction in light of agreement to arbitrate); *Olde Discount Corp. v. Tupman*, 1 F.3d 202 (3d Cir. 1993). Courts have recognized that were they to deny injunctive relief, a party seeking arbitration would be deprived of their selected forum, forced to engage in costly discovery, and potentially go to trial. *Olde Discount Corp. v. Tupman*, 1 F.3d 202 (3d Cir. 1993); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 482 F.Supp. 788, 792 (D. Fla. 1980), *rev'd on other grounds*, 677 F.2d 391 (4th Cir. 1982) (the advantages of arbitration pursuant to an agreement of the parties are forever dissipated when it is

peremptorily supplanted by litigation.)  Parties select arbitration because they hope that it will provide them with speedy, efficient, and simpler relief than available in the courts.  *Olde Discount Corp,* 1 F.3d at 212.  To deprive them of that right constitutes irreparable harm that cannot be corrected with money damages.  *Olde Discount Corp. v. Tupman,* 1 F.3d 202, 212 (3d Cir. 1993).

C.   **Public Interest and Balancing of the Equities Overwhelmingly Favors Injunctive Relief**

Finally, there can be no serious question that the balance of the equities supports injunctive relief.  First, the requested temporary restraining order and preliminary injunction will merely preserve the status quo and prevent irreparable harm and damage to National Union pending resolution of its motion to compel arbitration.  If an injunction is granted, Respondent will simply be barred from impermissibly breaching the arbitration provisions of the Indemnity Agreements and Payment Agreements and wrongfully denying National Union its bargained-for rights while this Court determines National Union's motion to compel arbitration.  In the absence of a preliminary injunction, however, National Union will be permanently damaged as it will be forced to proceed with litigation, and face the resolution of its rights and claims, in a jurisdiction it did not select.

By contrast, if this court grants a temporary restraining order pending a hearing on a preliminary injunction, there will be no harm to Respondent.  It is undisputed that the litigation against National Union has not yet proceeded — National Union has not yet even been served — thus, injunctive relief will merely preserve the status quo.  If the litigation in California is the correct forum for the dispute, injunctive relief will, at most, merely cause a brief delay of the litigation.

17

Additionally, New York courts have consistently recognized that public policy strongly favors the enforcement of contracts. "In general, public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements." *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616 (S.D.N.Y. 2010) ("The public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense."). This is particularly true in the context of arbitration agreements where courts have repeatedly made clear that there is a strong public policy in favor of arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). Given the harm National Union will face and the strong public policy in favor of enforcement of arbitration provisions, this Court should grant National Union's request for a temporary restraining order.

## III.   RESPONDENT'S FILING IN CALIFORNIA STATE COURT SHOULD BE GIVEN NO WEIGHT

AMD will likely argue that as they were the first to file in a court, that their chosen forum should be given precedence. However, courts have repeatedly rejected similar arguments in the context of disputes over the enforcement of arbitration agreements. Under the FAA, since the parties agreed to arbitrate in New York, only a court in New York can order arbitration. 9 U.S.C. § 4; *Petition of Home Ins. Co.*, 908 F. Supp. 180, 182 (S.D.N.Y. 1995) ("only the district court in the district where the arbitration will proceed may order arbitration"); *Raytheon Co. v. National Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 354-55 (S.D.N.Y. 2004) (departing from the first to file rule where the authority to decide issues regarding arbitration is certain in New York and not in first filed jurisdiction); *Nat'l Union Fire Ins. Co. v. Las Vegas Professional Football Ltd. P'ship*, 2010 WL 286634, at *3 (S.D.N.Y. 2010) (departing from first to file rule because "it

18

would have been inequitable to reward [insured] for breaching its arbitration obligation by declining to rule on National Union's petition [to compel arbitration]").

Further, it would lead to an absurd result if National Union was punished for abiding by the terms of the Indemnity Agreements and Payment Agreements, and AMD was rewarded for its breach. *See Nat'l Union*, 2010 WL 286634, at *3. In filing in California, AMD disregarded its contractual obligations in an attempt to secure a more favorable forum, it should not be permitted to benefit from such behavior. *See id.* (citing *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) ("litigating a claim is clearly inconsistent with any perceived right to arbitration; we do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration.")). Accordingly, the Court should not give any deference to Respondent's suit in California.

## CONCLUSION

For the foregoing reasons, National Union respectfully request that this Court:  (i) grant National Union's motion to compel arbitration; (ii) temporarily restrain, and after a hearing, preliminarily enjoin Respondent from proceeding with the California litigation pending resolution of National Union's motion to compel arbitration; (iii) stay the California Action; and (iv) grant such other and further relief that this Court deems just and proper.

Dated: July 18, 2016                                  Respectfully submitted,

                                                **SIDLEY AUSTIN LLP**

                                        By: _____
                                                Nicholas P. Crowell
                                                ncrowell@sidley.com
                                                Andrew D. Hart.
                                                  ahart@sidley.com
                                                  787 Seventh Avenue
                                                  New York, NY 10010
                                                  Telephone:  (212) 839-5300

                                            *Attorneys for Petitioner National Union Fire*
                                            *Insurance Company of Pittsburgh, Pa*