**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**NATIONAL UNION FIRE INSURANCE CO.,**
**ET AL.,**                                                      **16-cv-5699 (JGK)**

                 **Petitioners,**               <u>**MEMORANDUM OPINION AND**</u>
<u>**ORDER**</u>

       **- against -**

**ADVANCED MICRO DEVICES, INC.,**

                 **Respondent.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

On July 18, 2016, the petitioners, National Union Fire
Insurance, on behalf of itself and its related insurers
("National Union") moved for a preliminary injunction against
Advanced Micro Devices, Inc. ("AMD") to enjoin AMD from pursuing
a state court action in California and petitioned to compel AMD
to arbitrate a dispute pursuant to agreements entered into by
the parties. The underlying dispute in this case arose when AMD
allegedly refused to pay over $3 million to National Union as
part of retrospectively adjusted premiums on Workers
Compensation/ Employers Liability Insurance policies.

On July 15, 2016, National Union served a demand to
arbitrate on AMD, and on the same day, AMD filed a declaratory
judgment action in California state court, seeking a declaration
that the Indemnity Agreements upon which National Union was
relying were unenforceable under California law and that AMD did

not owe National Union the retrospective premiums under the insurance policies between National Union and AMD.

National Union filed this action on July 18, 2016, seeking to compel AMD to arbitrate the dispute pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and to enjoin AMD from further proceedings in California state court. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**I.**

The following facts are taken from the parties' submissions.

National Union provided AMD with workers compensation and employers' liability insurance for the period from July 1, 1988 to July 1, 2002. Hart Decl., ¶ 10; Jacobs Decl., ¶ 8. National Union is a Pennsylvania corporation with its principal place of business in New York. Petition ¶ 5. AMD, a Delaware corporation, headquartered in California, designs and sells semiconductors. Jacobs Decl., ¶ 2. AMD was sued in Delaware in three separate tort actions brought by former AMD employees and/or contractors and their families alleging exposure to allegedly dangerous substances at AMD factories. Jacobs Decl., ¶ 4. Chubb, AMD's Commercial General Liability insurer, provided the defense funds in the exposure cases. Jacobs Decl., ¶ 7.

According to AMD, National Union contributed to AMD's
defense costs and made additional payments to Chubb. Jacobs
Decl., ¶¶ 10, 12. In 2015, National Union assessed certain fees
against AMD in connection with the 1988-2002 insurance policies.
Jacobs Decl., ¶ 16 & Ex. D. These fees, referred to as
retrospective premiums, total $3,339,575, comprised of losses
and expenses paid by National Union and related fees. Hart
Decl., ¶ 15. AMD refused to pay. The payments were allegedly
required pursuant to a series of Indemnity Agreements and
Payment Agreements entered into between National Union and AMD
between 1988 and 1998.[1] Hart Decl., ¶¶ 2-9; DeHaven Decl., ¶¶ 4-
13.

On July 1, 2015, the parties entered into a stipulation
that tolled the statute of limitations. Hart Decl., ¶ 20. The
parties unsuccessfully engaged in mediation efforts on June 30,
2016. Hart Decl., ¶ 21. National Union filed a notice of
termination of the tolling agreement on June 30, 2016. Hart
Decl., ¶ 22. The tolling agreement was effectively terminated on
July 15, 2016. Hart Decl., ¶ 23. National Union served AMD with
a demand for arbitration on July 15, 2016. Hart Decl., ¶ 23. On
the same day, AMD filed a complaint against National Union and
affiliated insurers in California state court. Hart Decl., ¶ 24.

---

[1] National Union contended that the 1998 Agreement applies to the period from
1999 to 2002.

On July 18, 2016, National Union filed this action in the
Southern District of New York, seeking an order compelling
arbitration and a preliminary injunction enjoining AMD from
further proceedings in California. On July 19, 2016, the Court
held a conference with the parties and issued a briefing
schedule. The Court heard oral argument on August 3, 2016.

## II.

The petitioners move pursuant to the FAA to compel the
respondent to proceed with arbitration in accordance with the
provisions of the Indemnity and Payment Agreements. As the Court
of Appeals for the Second Circuit has noted: "The Federal
Arbitration Act, 9 U.S.C. §§ 1 et seq. (1988), requires the
federal courts to enforce arbitration agreements, reflecting
Congress' recognition that arbitration is to be encouraged as a
means of reducing the costs and delays associated with
litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.
2003) (per curiam) (quoting Deloitte Noraudit A/S v. Deloitte
Haskins & Sells, U.S., 9 F.3d 1060, 1063 (2d Cir. 1993)).

In accordance with the FAA, district courts may compel
arbitration when a party does not abide by an arbitration
agreement. See 9 U.S.C. § 4. Under the FAA, arbitration must
proceed in the district where the order directing arbitration is
filed and a federal district court may only compel arbitration

in its own district. See id.; In re Home Ins. Co., 908 F. Supp. 180, 182 (S.D.N.Y. 1995) (collecting cases).

When considering a petition to compel arbitration under the FAA, a court must determine: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident and Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (internal quotation and citation omitted). Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract."); see also In re Home Ins. Co., 908 F. Supp. at 183. While parties are not required to arbitrate when they have not agreed to, see Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989), they are bound by provisions to which they have agreed. See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845 (2d Cir. 1987); see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2001).

In this case, National Union argues that the Indemnity Agreements provide for arbitration in New York of disputes that

may arise between the parties. E.g., Hart Decl., Ex. 1 at 8.
National Union also points to arbitration clauses in agreements
entered into after 1995, namely the Payment Agreements. Hart
Decl., Ex. 6 at 5. AMD argues that the Indemnity Agreements and
the Payment Agreements where the arbitration provisions are
found are unauthenticated side agreements that were not filed
with California's insurance regulators and accordingly, that the
arbitration clauses are unenforceable. AMD points out that the
insurance policies themselves do not contain an agreement to
arbitrate; only the Indemnity Agreements and Payment Agreements
contain such clauses. The provisions in the Indemnity and
Payment Agreements unmistakably require arbitration of all
disputes in connection with payments pursuant to those
agreements. The arbitration clauses in the Indemnity Agreements
encompass "all disputes or differences arising out of the
interpretation of this Agreement." Hart Decl., Ex. 1 at 8-9. The
arbitration provisions in the Payment Agreements are even
broader. Hart Decl., Ex. 6 at 5 ("All unresolved disputes or
differences arising out of or relating to this Agreement will be
submitted to the decision of three Arbitrators."); see also
Orange Cty. Choppers, Inc. v. Goen Techs. Corp., 374 F. Supp. 2d
372, 374 (S.D.N.Y. 2005).

Although AMD has questioned the authenticity of the
Indemnity and Payment Agreements, the agreements are signed by

representatives of AMD and National Union and have been
authenticated and affirmed as business records by an executive
of National Union. <u>See</u> DeHaven Decl., ¶¶ 1-13. It is plain that
they are authentic and would be admissible evidence.

AMD's primary challenge to the enforceability of the
arbitration clauses is that the Indemnity and Payment Agreements
are unenforceable because they were not properly filed with
California insurance regulators. AMD also argues that National
Union waived its right to assert reimbursement under the
Indemnity and Payment Agreements and should be estopped from
seeking such reimbursement. Challenges to the enforceability of
an entire agreement that contains an arbitration clause, as
opposed to a challenge to the arbitration clause itself, are to
be considered by the arbitrator in the first instance. <u>See</u>
<u>Buckeye Check Cashing Inc. v. Cardegna</u>, 546 U.S. 440, 449
(2006); <u>In re Arbitration Between Nuclear Elec. Ins. Ltd. v.</u>
<u>Cent. Power & Light Co.</u>, 926 F. Supp. 428, 433-34 (S.D.N.Y.
1996). AMD's challenge to the enforceability of the agreements
is therefore a matter for the arbitrators to decide. <u>See</u> <u>id.</u>
AMD's objections to the arbitration clauses are not to the
clauses themselves but rather to the underlying Indemnity and

Payment Agreements as a whole, and thus, the challenge must be decided by the arbitrator, not this Court. See id. at 435.[2]

Because the arbitration clauses are not so broad as to provide clearly and unmistakably that the arbitrator should decide arbitrability, the Court must decide whether the dispute in this case falls within the scope of the arbitration provisions in the Indemnity and the Payment Agreements. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996); Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 306 F. Supp. 2d 346, 356 (S.D.N.Y. 2004). The arbitration clauses in the Indemnity Agreements are narrow because arbitration applies to disputes that arise out of the *interpretation* of the Agreements. See Hart Decl., Ex. 1 at 8; Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 857 F. Supp. 2d 404, 409-10 (S.D.N.Y. 2012) (construing a similarly worded clause as a narrow arbitration clause). The arbitration clauses in the Payment Agreements are broader because they apply to disputes arising out of or relating to the Agreements. Hart Decl., Ex. 6 at 5. The dispute in this case plainly falls within the scope of the arbitration clauses in the Indemnity and

---

[2] This is not a case where AMD claims that it never consented to the agreements because its signature was forged, or an imposter signed the agreements, or that it was forced to sign the agreements, or that it otherwise did not willingly manifest its assent to the agreements. See Nuclear Elec. Ins. Ltd., 926 F. Supp. at 434; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).

Payment Agreements because the dispute relates to whether AMD owes the payments National Union claims AMD owes under those Agreements.

AMD argues that the petition to compel arbitration relates only to the Indemnity and Payment Agreements, not to the insurance policies and thus, the issues in the California action do not fall within the scope of any agreement to arbitrate. But it is plain that the substance of the AMD state court action is the same as the arbitration that National Union seeks to compel. AMD's complaint in the state court action seeks a declaratory judgment that the Indemnity Agreements are unenforceable. Hart Decl., Ex. 13, at 8.

Specifically, AMD alleges in the California complaint:

AMD brings this action for declaratory and other relief to confirm that AIG is entitled to none of the reimbursement it seeks; that AIG's Indemnity Agreements, even if authenticated, would constitute modification of the WC'EL Policies that are illegal and unenforceable under California law in this context; and that AIG has waived and is estopped from enforcing against AMD such agreements as it might authenticate. Further, since AIG's attempts to enforce such unlawful agreements against AMD constitute violations of the Unfair Competition law, they must be enjoined.

Id. at 3. At bottom, the dispute in the California state court action and in the arbitration is the same – whether National Union is entitled to the amounts it seeks under the Indemnity and Payment Agreements. See In re Home Ins.

<u>Co.</u>, 908 F. Supp. at 184. AMD recognizes that the enforceability of the Indemnity Agreements is central to its claims.

Upon being satisfied that there is an agreement to arbitrate, and that the dispute falls within the scope of the arbitration agreement, the Court should determine whether one party has refused to abide by the arbitration clause. If so, the Court must grant the petition to compel arbitration. <u>Nuclear Elec.</u>, 926 F. Supp. at 432. AMD has plainly refused arbitration and failed to comply with the arbitration clause. "A party can be deemed to have refused arbitration by filing a lawsuit on a matter that comes within the scope of the arbitration clause." <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Konvalinka</u>, No. 10-cv-9355 (AKH), 2011 WL 13070859, at *3 (S.D.N.Y. Mar. 17, 2011) (citations omitted). National Union has satisfied the requirements necessary to grant a petition to compel arbitration under 9 U.S.C. § 4. National Union has submitted contracts containing arbitration clauses. The arbitration clauses require arbitration of all disputes arising out of the interpretation of the Indemnity Agreements and all disputes arising out of or relating to the Payment Agreements, and AMD has refused to arbitrate.

AMD argues that the parties' dispute should be resolved in the first-filed action commenced by AMD in California state

court. AMD contends that California courts are better positioned
to address issues of California insurance law and the California
court could compel arbitration if appropriate. This argument is
unavailing. Generally where there are two competing lawsuits,
the first filed suit has priority over the second. Nat'l Union
Fire Ins. Co. of Pittsburgh v. Las Vegas Prof'l Football Ltd.
P'ship, No. 09-cv-7490 (PKC), 2010 WL 286634, at *3 (S.D.N.Y.
Jan. 15, 2010), aff'd sub nom. Nat'l Union Fire Ins. Co. of
Pittsburgh v. Las Vegas Prof'l Football Ltd. P'ship, 409 F.
App'x 401 (2d Cir. 2010).

However, there are strong reasons why this Court should not
defer to the California state court action. It is plain that the
dispute between the parties is subject to arbitration. The
arbitration clauses all provide that the parties will arbitrate
in New York. While it is clear that this Court can compel the
arbitration in New York pursuant to the parties' agreements, the
power of the California court is uncertain. See Raytheon, 306 F.
Supp. 2d at 354; In re Home Ins. Co., 908 F. Supp. at 182. Thus,
this Court, rather than the California court is best positioned
to enforce the parties' agreement to arbitrate. It would also be
inequitable to penalize National Union, as the second filer, for
abiding by the arbitration agreement when AMD, the first filer,
disregarded its contractual obligation to arbitrate. See Las
Vegas Prof'l Football Ltd. P'ship, 2010 WL 286634, at *3.

11

Moreover, the first filed action in California was filed on the same day as the demand for arbitration, and only three days before this action was filed. See id. ("[A] minimum of inefficiency or duplication of effort would occur from compelling arbitration."); Raytheon, 306 F. Supp. 2d at 354-55. Thus, there is no basis to defer to the California state action.

Therefore, the petition to compel arbitration is granted.

**III.**

With respect to the preliminary injunction enjoining AMD from proceeding further in the California state court action, the requirements of a preliminary injunction have been satisfied.[3] The standards that govern the issuance of a preliminary injunction are well established. "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in

---

[3] To the extent National Union requests a stay of the proceedings in the California Action, National Union recognizes that the FAA generally only authorizes a district court to grant a stay of an action in this district, subject to certain exceptions. 9 U.S.C. § 3; Konvalinka, 2011 WL 13070859, at *4-*5. Because this Court grants National Union's motion for a preliminary injunction enjoining AMD from pursuing its state action in California, a stay of the California state action is unnecessary. See Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc., 962 F. Supp. 385, 390-91 (S.D.N.Y. 1997) (enjoining a party from proceeding in a state court action).

the movant's favor." <u>Doninger v. Niehoff</u>, 527 F.3d 41, 47 (2d Cir. 2008).

AMD argues that National Union faces no irreparable injury in litigating in California. However, it is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm. <u>See</u> <u>Emilio v. Sprint Spectrum L.P.</u>, No. 08-cv-7147 (BSJ), 2008 WL 4865050, at *3 (S.D.N.Y. Nov. 6, 2008) (granting injunctive relief that prevented the respondent from proceeding with a state court action while an arbitration was pending); <u>Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.</u>, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) (collecting cases); <u>id.</u> at 388 ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." (internal quotation marks and citation omitted)).

National Union has also shown a likelihood of success because it has shown that it has a dispute with AMD that should be decided by an arbitration in New York.

Accordingly, the preliminary injunction enjoining AMD from proceeding with its state court action in California is granted.

**CONCLUSION**

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. National Union's petition to compel arbitration is granted. National Union's motion to enjoin AMD during the pendency of the arbitration from proceeding with the state court action in California is granted. The Clerk of Court is directed to close all pending motions.

The parties should submit a proposed order to the Court by August 10, 2016, in accordance with this decision that directs the parties to arbitrate their dispute. If the parties cannot agree to a jointly proposed order, each party may submit a proposed order to the Court by August 10, 2016, and any objections to the other side's order by August 12, 2016. On the record at the argument of the pending motion, the parties agreed that the time to appoint the arbitrators is extended to 30 days from the issuance of the order compelling arbitration.

SO ORDERED.
Dated:     New York, New York
           August 4, 2016

                         _____/s/_____
                              John G. Koeltl
                         United States District Judge

14